UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

PERRY SIMMS,

       Plaintiff,

v.

JAMES LEBLANC, *et al.*

       Defendants.

Civil Action No.: 17-cv-202-JWD-EWD

**Opposition to Defendants' Motion for Summary Judgment**

### I. INTRODUCTION

Angola's policies say that an inmate suffering unexplained chest pain is an "emergency event," and must be treated as an emergency. Ex. F at 110 (Treatment Protocol). As Dr. Raman Singh put it, "emergency sick call is designed for any offender who's having chest pain, asthma attack, or something really serious. And that should be addressed immediately." Accordingly, Angola's protocols lay out specific steps EMTs and guards must take when confronted with an inmate with unexplained chest pain, including administering aspirin, oxygen, and nitrogycerin, immediately calling for transport, and not leaving the inmate alone.

Early in the morning of May 25, 2016, Angola inmate Perry Simms woke up in his dormitory with severe chest pain, dizziness, and nausea. He told a guard, Defendant Justin Butler, who called for an EMT. At 2:45 a.m., Defendant EMT Thrasher arrived and confirmed that Mr. Simms had symptoms consistent with a heart attack. Both EMT Thrasher and Justin Butler admitted that they thought that Mr. Simms "might be having a heart attack." Ex. N at 99; Ex. O at 83.

But neither the EMT (Defendant Darrell Thrasher) nor the guard (Defendant Justin Butler) treated it as an emergency. EMT Thrasher "decided not to follow" certain steps of Angola's heart attack protocol regarding aspirin, oxygen, and a pulse oximeter. Ex. N at 129-130. He declared the situation to be "non-emergent" and declined to call for an ambulance, saying instead that Mr. Butler could be

1

transported to the clinic whenever a patrol car was available. He then left. Guard Justin Butler then ordered Mr. Simms to return to his dormitory, and called for a patrol car – which he knew to be a futile gesture because no patrol drivers were working that night. Mr. Butler went on with his shift, never ensuring that Mr. Simms was taken to the clinic.

As a result, Mr. Simms lay in his bed for the next **six and a half hours** in excruciating pain, suffering from a heart attack, and thinking he would die. He wasn't taken to a clinic until 9:13 a.m. After being taken to the clinic, doctors found that an enzyme level in Mr. Simm's blood measuring heart tissue degradation was more than 3,000% above the critical threshold. A heart attack was confirmed and Mr. Simms eventually received a successful double bypass surgery.

Thus, Defendants exhibited deliberate indifference to Mr. Simms' serious medical need by directly violating protocol and treating Mr. Simms' medical emergency like a non-emergency event. For that reason, Defendants' motion should be denied.

## II.     STATEMENT OF FACTS

### A.     Defendants' Protocols Treat Chest Pain as an "Emergency Event" Requiring Immediate Transport to the Clinic.

According to Dr. Raman Singh, the head of the Department of Corrections' medical department at all relevant times, an inmate suffering chest pain is an emergency event that should be addressed immediately: "Emergency sick call is designed for any offender who's having chest pain, asthma attack, or something really serious. And that should be addressed immediately." Ex. H (Singh testimony from *Hacker v. Cain*) at 113. And he has explained what an emergency situation means in practical terms.

> Emergent means it cannot wait. It's immediately life-threatening or limb threatening. I can give you an example. A known cardiac patient is having serious chest pain. That's not urgent. That's emergent. It means he needs action. He needs to go to an ER right now.

Ex. I at 46. *See also id.* at 79-80: "[If someone] is having chest pain . . . . They need to take [that person] to an ER right then and there."

2

Chest pain is treated as an emergency situation because it is a symptom of a myocardial infarction – commonly known as a heart attack. *See* Ex. E at 85, 105 (Angola's protocols listing chest pain as symptom of heart attack); *see also* Ex. B at No. 89 (testimony of Dr. Singh that "if you're asking for symptoms of heart attack, they can be chest pain.")[1]

For that reason, Angola's protocols are all built around the fundamental fact that chest pain is an emergency situation. For example, the Angola clinic's Treatment Protocol Guide classifies chest pain as an "Emergency event." Ex. F at 110. Angola's protocols require that EMTs must err on the side of caution, because:

> Not all patients who experience myocardial infarction present with the classic crushing type chest discomfort. Symptoms may be very vague, especially in the geriatric age group. The paramedic must maintain a high index of suspicion in any patient, regardless of age, who presents with symptoms including but not limited to: [chest pain, nausea, weakness, *etc.*]

Ex. E at 85 (Myocardial Infarction Treatment Protocol), Ex. B, C at RFA No. 49.

Accordingly, Angola protocols set out very clear steps that an EMT must follow when they encounter an inmate showing symptoms consistent with a heart attack, including:

- Performing a primary survey;
- Administering oxygen;
- Attaching an EKG and pulse oximeter;
- Administering chewable baby aspirin;
- Administering Plavix;
- Starting a saline drip;
- Administering nitropaste to the chest wall;
- Administering nitroglycerin if the patient does not have a low blood pressure;
- Administering Phenergan for nausea;
- Testing for blood sugar; and
- Beginning transport to the clinic.

Ex. E at 29 ("Non-STEMI/STEMI Protocol"), 85, Ex. B, C at RFA No. 51.

Angola EMTs are required to take and document at least two sets of vital signs for any

---

[1] The protocols indicate that other symptoms of a heart attack include nausea and weakness. Ex. E at 85, 105.

3

patient they have contact with in the field for longer than five minutes. Ex. E at 15. Additionally, the protocols make clear that EMTs must "not leave victim alone." Ex. E at 105.

All of these protocols were in effect at the time of Mr. Simms' heart attack (Ex. C at RFA Nos. 40, 43, 47) and Angola EMTs were required to document any deviance from the treatment protocols and provide a reason for the deviance (Ex. E at 105). No protocol or policy suggests that certain classes of EMTs may ignore some or all of these protocols.

**B.    Defendants' Protocols Require Transporting an Inmate with Chest Pains to the Clinic "Immediately" or "as soon as feasible" – a Period Which <u>Must</u> be Less Than Four Hours.**

According to Angola Directive 13.058, EMTs are to triage inmate medical concerns into three categories:

Priority I –     Life-Threatening. Requires immediate treatment.

Priority II –    Emergent but not Life-Threatening. Should be seen at the ATU "as soon as feasible" but "may be held up to four hours, depending on the severity of the illness."

Priority III -   Non-Emergent. May be held "for four to six hours if necessary, but should be seen as soon as feasible."

Ex. F at 82-83.

Angola clinic's Treatment Protocol Guide provides a "guide to triage" that classifies chest pain as an "Emergency event." Ex. F at 110. As a result, chest pain is a Priority I or II event, requiring transport to the ATU as soon as feasible, and in any event less than four hours. Ex. F at 82-83.

**B.    On May 25, 2016, EMT Thrasher confirmed that Mr. Simms had symptoms consistent with a heart attack, but "decided not to follow" the protocol. He declared Mr. Simms to be non-emergent, and did not call for an ambulance. Justin Butler ordered Mr. Simms to return to his dormitory.**

On May 25, 2016, before 2:00 a.m., Angola inmate Perry Simms woke up in his dormitory with "severe chest pains," dizziness, and a "feeling that he had to vomit but could not." *See* Ex. L at 6; Ex. J at 4. He told the guard on duty, Justin Butler, about his problem. Ex. J at 4.

At 2:20 a.m., Justin Butler called for an EMT. Ex. N at 65. At 2:45 a.m., EMT Darrell Thrasher

4

arrived and evaluated Mr. Simms. Ex. L at 6, Ex. K. He observed that Mr. Simms was experiencing unexplained chest pain, nausea, and ambulation with difficulty. Ex. L at 6; Ex. N (Depo. of Thrasher) at 81. Chest pain, nausea, and weakness are all specified symptoms of a heart attack. Ex. E at 105. Thus, Mr. Simms presented with signs and symptoms consistent with a heart attack, as Defendants Thrasher and Butler concede. Ex. B at RFA No. 52.

Defendant Thrasher admitted that it went through "his mind that morning" that Mr. Simms "might be having a heart attack." Ex. N at 99. Defendant Butler likewise said it "crossed [his] mind" that Mr. Simms "might be having a heart attack." Ex. O at 83.

So EMT Thrasher circled "emergency" on the triage sheet. Ex. L at 6; Ex. N at 83. But despite that, he declared Mr. Simms' condition to be "non-emergent" – and as a result, neither Thrasher nor Butler called for an ambulance. R. Doc. 57-2 at ¶ 4. Mr. Thrasher gave Mr. Butler a clinic referral slip and told him to get Mr. Simms to the prison clinic "as soon as patrol is available." Ex. N at 102-103, 111; Ex L at 5 (referral slip).

Aside from checking Mr. Simms vitals, EMT Thrasher performed none of the steps of Angola's heart attack protocols. He did not attach an ECG or pulse oximeter, or administer oxygen, an IV, nitropaste, nitroglycerin, morphine sulfate, Metoprolol, or an Accucheck, Ex. C at RFA Nos. 54-63. He did not even give Mr. Simms an aspirin. Ex. B at RFA No. 57. Mr. Thrasher said he "decided not to follow" the protocol steps about aspirin, oxygen, and the pulse oximeter. Ex. N at 129-130.

Mr. Thrasher admits that he deviated from the protocol. Ex. N at 147. But he did not document any deviance from treatment protocols nor provide a reason for any deviance (Ex. B at RFA No. 66), as is required by Angola policy (Ex. E at 105). Mr. Thrasher also did not document Mr. Simms vitals more than once, even though he was with Mr. Simms for more than five minutes. Ex. B at 67-70; cf. Ex. E at 15 (requiring two sets of vitals if contact lasts longer than five minutes).

Mr. Thrasher testified that could have called for an ambulance, but decided that "non-emergent

5

transport via patrol was the decision [he] chose to make." Ex. N at 86. He chose this because, he now claims, Mr. Simms' vitals were not "unreasonably low or outrageously high." *Id.*

After giving Mr. Butler the referral slip, EMT Thrasher left. See Ex. N at 111-112. Mr. Butler ordered Mr. Simms to return to his bunk. Ex. B. at RFA No. 18. Mr. Butler called for a patrol, even though he knew this was a futile gesture – there was no patrol driver on duty that night. Ex. O at 53. He continued with the rest of his shift without obtaining transport for Mr. Simms, until he was relieved at 5:00 a.m. Ex. O at 60. Mr. Simms was not taken to the Angola clinic until 9:13 a.m. Ex. B at RFA No. 19.

At the Angola clinic, a blood test showed that Mr. Simms blood had a level of Troponin (a byproduct of heart tissue breaking down and an indicator of a heart attack) more than **3,000%** of the critical threshold. Ex. L at 1; Ex. B at RFA No. 77.

Mr. Simms was stabilized and then transported to Lane Hospital and Lady of the Lake, where he underwent cardiac catheterization and a double heart bypass surgery. R. Doc. 57-2 at ¶ 9-10. The surgery was successful, and Mr. Simms recovered, albeit with continuing issues of chest pain, dizziness, and trouble obtaining his medication. Ex. L at 2-3.

### III.  DISCUSSION

Summary judgment is only appropriate when there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**A.      Defendants' motion should be denied because there are disputed material facts**

Any genuine issues as to material facts will defeat summary judgment. Fed.R.Civ.P. 56(c). Here, there are numerous disputed material facts, including whether Mr. Simms had a history of cardiac issues, what Mr. Butler told Mr. Simms, and whether Mr. Simms was transported to the treatment center once patrol was available. *See* Plaintiff's Response to Defendants' Statement of Material Facts at ¶¶ 1, 3, 4, 5,

6, 12. For that reason, Defendants' motion should be denied.

**B.    Defendants' motion should be denied because Fifth Circuit law holds that delayed treatment of unexplained, severe chest pain constitutes deliberate indifference.**

"[E]lementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To prove liability, an inmate plaintiff must show two things: (1) a serious medical need and (2) defendants' deliberate indifference to that serious medical need. *Estelle, supra*, 429 U.S. at 104.

    1.    <u>Defendants do not dispute that Mr. Simms had a serious medical need.</u>

Here, Defendants do not dispute that Mr. Simms was suffering a serious medical need; they only argue that that Butler and Thrasher failed to exhibit deliberate indifference to that serious medical need. R. Doc. 57-1 at 4-10.

Nor could they argue against serious medical need. Defendants Butler and Thrasher concede Mr. Simms was suffering from a "serious illness," defined as "a condition wherein death may reasonably be anticipated by the physician in charge." Ex. B at RFA Nos. 79-81. And a court can take "judicial notice that severe chest pains can be indicative of a serious medical need." *Easter v. Powell*, 94-cv-00712 (E.D. Tex., March 27, 1996) ("The Court has), *affirmed by Easter v. Powell*, 467 F. 3d 459 (5th Cir. 2006).

    2.    <u>The Supreme Court has held that delay of care can constitute deliberate indifference.</u>

For more than four decades, it has been black-letter law that a delay of treatment can work an Eighth Amendment violation:

> [Deliberate indifference can be] manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying <u>or delaying</u> access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976) (emphasis added).

If care has been delayed, no permanent injury is required to establish the claim: the "pain suffered during a delay in treatment can constitute a substantial harm and form the basis for an award of

7

damages." *Alderson v. Concordia Parish Correctional Facility*, 848 F. 3d 415, 422 (5th Cir. 2017) (remanding for consideration of whether delay in providing pain medication – including a one-hour delay before taking inmate to hospital – was deliberate indifference).

Thus, a "delay in treatment may show deliberate indifference if it exacerbated the inmate's injury *or unnecessarily prolonged his pain,"* and "even brief, unexplained delays in treatment may constitute deliberate indifference." *Lewis v. McLean*, 864 F. 3d 556, 563 (7th Cir. 2017) (emphasis in original) (holding that jury could reasonably find that "delaying Lewis's treatment for approximately one and a half hours" for back spasm constituted deliberate indifference.); *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir.1990) (few hours delay in treating inmate's broken foot could render defendants liable).

3. <u>The Fifth Circuit Has Held that Delayed Care Resulting from a Failure to Follow Chest Pain Protocols Constitutes Deliberate Indifference.</u>

Courts have repeatedly held that health professionals act with deliberate indifference when they fail to follow protocols for inmates with unexplained chest pain.

In the Fifth Circuit, *Easter v. Powell* addressed a very similar fact pattern to the one at issue here. 467 F. 3d 459 (5th Cir. 2006). In that case, inmate Easter went to the prison doctor with chest pain and vomiting. A doctor laid out a protocol to be followed for him, including the application of nitroglycerin. When Easter returned with more chest pain, Nurse Powell refused to provide him with nitroglycerin per the doctor-created protocol, and had security escort him back to his cell. After four hours of severe pain, Powell returned to the clinic and was properly treated by a different medical professional. *Id.* at 461-462. The trial court denied Powell summary judgment and qualified immunity. *Id.* at 462.

On appeal, the Fifth Circuit noted that "Powell failed to follow a prescribed course of treatment that called for the administration of nitroglycerin when he experienced chest pain." *Id.* at 464. And because "Powell refused to provide any treatment to, and ignored the complaints of, a patient suffering

8

from severe chest pain that she knew had a history of cardiac problems" the Fifth Circuit determined that "Powell's alleged conduct meets the deliberate indifference' threshold." *Id.*

Here, we have the very same thing:

- Doctor-created protocols for chest pain that include the administering of nitroglycerin (Section II(A), *supra*);

- A health professional who "decided not to follow" those protocols (Ex. N at 129-130; Ex. B, C at RFA Nos. 54-63), even though it went through his mind that the inmate "might be having a heart attack" (Ex. N at 99); and

- The inmate being sent back to his dormitory to suffer for hours (Ex. B. at RFA No. 18).

If anything, Mr. Simms facts are stronger for showing deliberate indifference than those in *Easter* – both because he had to suffer for more than half again as long (6.5 hours versus 4 in *Easter)*, and because in *Easter* the plaintiff could take himself to the prison clinic. Mr. Simms, by contrast, was entirely at the mercy of Thrasher and Butler.

*Easter* is not the only such case. In *Easter*, the Fifth Circuit cited *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) for the proposition that "a prison official's refusal to drive an inmate to the hospital when he had been informed that the inmate might be having a heart attack and witnessed the inmate displaying symptoms consistent with a heart attack met the deliberate indifference standard." *Easter, supra,* at Fn. 25. Here, both Thrasher and Butler declined to take Mr. Simms to the hospital or call for an ambulance – even though they concede that he was demonstrating symptoms consistent with a heart attack. Ex. B at RFA No. 52; Ex. N at 93-94.

Similarly, in *Mata v. Saiz*, 427 F. 3d 745 (10th Cir. 2005), Defendant Nurse Mata was confronted with an inmate "suffering from severe chest pain," but "neither administered first aid nor summoned medical assistance." *Id.* at 756. The Tenth Circuit reversed the trial court's grant of summary judgment for Nurse Mata, holding that as "a result of Ms. Weldon's absolute failure to follow the required protocols, contact the appropriate medical personnel, and/or attempt to assist Ms. Mata in any fashion,

9

there is evidence Ms. Mata had to endure unnecessary pain and suffering for several additional hours that did not 'serve any penological purpose.'" *Id.* at 758. *See also Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 558 (6th Cir. 2014) (nurse could be held liable for inmate's heart attack where she knew that he experienced acute chest pain for a few minutes and was not taking necessary medication, even though nurse believed it to be merely urgent, she failed to send him to the hospital); *Estate of Carter v City of Detroit,* 408 F.3d 304 (6th Cir. 2005) (where there were classic symptoms of a heart attack, Plaintiff did not have to show that Defendants knew of exact medical risk even when she did not self-diagnose).

**C.    EMT Thrasher acted with deliberate indifference when he saw that Mr. Simms had the symptoms of a heart attack, thought Mr. Simms "might be having a heart attack," and then rejected protocol to declare him non-emergent.**

As described above, Angola policy requires EMTs to treat inmates experiencing chest pains as a medical emergency. Ex. F at 110. But Defendant Darrell Thrasher, the EMT who treated Mr. Simms, did the opposite. He:

- Admittedly violated Directive 13.007 by taking twenty-five minutes to arrive (Ex. B at No. 12);

- Decided not to follow steps of the specified protocols (Ex. N at 129-130 (Thrasher testifies that he "decided not to follow" the protocol steps about aspirin, oxygen, a pulse oximeter)); and

- *Explicitly determined* Mr. Simms to be non-emergent. R. Doc. 57-2 at ¶ 4 ("Thrasher determined that Simms was non-emergent").

Mr. Thrasher determined Mr. Simms to be non-emergent even though he found Mr. Simms to be experiencing unexplained chest pain, nausea, and unexplained difficulty walking (Ex. N at 81-82), symptoms that he concedes are indicative of a heart attack (Ex. B at RFA No. 52). Mr. Thrasher circled "emergency" on the triage sheet (Ex. L at 6; Ex. N at 83), but decided that "non-emergent transport via patrol was the decision [he] chose to make" (Ex. N at 86). He decided that Mr. Simms was non-emergent even though it went "through [his] mind that morning" that Mr. Simms "might be having a heart attack." Ex. N at 99.

This is the very hallmark of deliberate indifference: an EMT presented with an inmate with the

10

symptoms of a heart attack, actually thinking that he "might be having a heart attack," and then rejecting protocol to declare him non-emergent.

In his motion, Mr. Thrasher moves for summary judgment on the argument that his "medical judgment" was that "Simms was not emergent." R. Doc. 57-1 at 5. But this argument supports a finding of deliberate indifference. As an "EMT basic," Mr. Thrasher concedes that he is not "able to diagnose medical problems." Ex. N (Deposition of Darrell Thrasher) at 16. As a result, his application of his own non-existent "medical judgment" to overrule the doctor-prescribed protocols, turning an emergency situation into a non-emergency situation, is precisely deliberate indifference. *See Easter, supra,* 467 F. 3d 459 (deliberate indifference to interfere "with the treatment once prescribed"); *Rodrigue v. Morehouse Det. Ctr.*, No. 09-cv-985, 2012 WL 4483438, at *6 (W.D. La. Sept. 28, 2012) ("When a gatekeeper to emergency care, like LPN Grayson, knowingly disregards a prisoner's complaints, she acts with deliberate indifference to that prison's medical needs."), *aff'd sub nom. Rodrigue v. Grayson*, 557 Fed.Appx. 341 (5th Cir. 2014). For these reasons, Mr. Thrasher's motion should be denied.

**D.    Defendants' motion should be denied because Justin Butler thought that Mr. Simms might be having a heart attack but took no steps to get him to the clinic other than calling for a patrol driver – even though he knew no drivers were working that night.**

Deliberate indifference can be shown by a guard's failure to obtain transport for an inmate when the inmate might be having a heart attack. *Easter, supra*, 467 F. 3d 459 fn. 25, *citing Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) ("a prison official's refusal to drive an inmate to the hospital when he had been informed that the inmate might be having a heart attack and witnessed the inmate displaying symptoms consistent with a heart attack met the deliberate indifference standard.")

Here, when Perry Simms told Justin Butler he had "severe chest pain," Mr. Butler knew it was significant. In his logbook, Mr. Butler noted the severe pain in red ink because it was a "out-of-the-ordinary, important" entry. Ex. O at 57. And it "crossed [his] mind" that Mr. Simms "might be having a heart attack." Ex. O at 83.

11

So Mr. Butler called for an EMT and was present while EMT Thrasher checked Mr. Simms out. He listened as EMT Thrasher told Perry Simms that "Security should be sending a patrol for you shortly." Ex. O at 63. But Justin Butler knew that this was likely false – because at that time, they were short-staffed and nobody was driving the patrol vehicle at night. Ex. O at 53. But Mr. Butler said nothing. *Id.* at 71.

After Thrasher left, Mr. Butler called for a patrol vehicle. Ex. O at 67. The person on the other end confirmed that there were no patrol drivers that night. *Id.* at 67. Thus, Mr. Butler knew that it would be hours – until at least 5:00 a.m. – before a patrol would take Mr. Simms to the clinic. *Id.* at 67. But he took <u>no other steps</u> to get Mr. Simms to the clinic. *Id.* at 85-86.

Mr. Butler's refusal to take any effective steps to arrange transport for an inmate he *knew* might be having a heart attack showed deliberate indifference to a serious medical need. As such, Defendants' motion should be denied.

**E.** **Plaintiff Agrees that Supervisory Defendants Remain in the Case only on State-Law *Respondeat Superior*.**

Defendants point out, correctly, that a supervisor can only be liable under Section 1983 if they are personally involved in the constitutional violation or there is a pattern of unremedied violations. R. Doc. 57-1 at 7-8, *citing Hinojosa v. Livingston*, 807 F. 3d 657, 667 (5th Cir. 2015). Plaintiff agrees that the supervisory defendants in this case (LeBlanc, Singh, Vannoy, and Lamartiniere) are not liable under Section 1983. They remain in the case, however, for *respondeat superior* liability on Plaintiff's state law claims. R. Doc. 22 at ¶¶ 94-96 (Count 6 – *Respondeat Superior*).

**F.** **Defendants' Motion Should be Denied Because According to Fifth Circuit Precedent, Mr. Simms' Six and a Half Hours of Severe Pain Is Sufficient to Establish Substantial Harm.**

Defendants argue that because Mr. Simms suffered "no permanent damage," he cannot "show that he suffered substantial harm as a result of the alleged delay." R. Doc. 57-1 at 8-10.

But that is not the law in the Fifth Circuit. According to Fifth Circuit case law, no permanent

12

damage is necessary for an Eighth Amendment claim; hours of pain are sufficient to establish substantial harm. *Easter v. Powell*, 467 F. 3d 459, 465 (5th Cir. 2006) ("Easter clearly stated an Eighth Amendment violation with regard to the severe chest pain he suffered during the [four-hour] period of time Powell refused to treat him."); *Alderson v. Concordia Parish Correctional Facility*, 848 F. 3d 415, 422 (5th Cir. 2017) (the "pain suffered during a delay in treatment can constitute a substantial harm and form the basis for an award of damages").

Here, Mr. Simms suffered severe chest pain for six and a half hours before being taken to the clinic and stabilized. *See* Ex. B at RFA No. 19. That is more than half again the period that was sufficient to establish substantial harm in *Easter*. Accordingly, Defendants' motion should be denied.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' motion.

Respectfully submitted,

/s/ William Most_____
WILLIAM MOST, La. Bar No. 36914
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023
Email: williammost@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2018, a copy of *Plaintiff's Opposition to Defendants' Motion for Summary Judgment* was filed electronically with the Clerk of Court via the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

_/s/William Most_
William Most